FILED

2010 Oct-26  PM 01:31
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL L. WORMLEY,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CV-09-S-2376-S** |
| | ) | |
| **MICHAEL  J.  ASTRUE,** | ) | |
| **Commissioner,  Social  Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant, Michael Wormley, commenced this action on November 23, 2009, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for a period of disability and disability insurance benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly evaluated the treatment notes of his treating physician, and that the ALJ should have found him to be disabled pursuant to the Medical-Vocational Guidelines ("grids"). Upon review of the record, the court concludes that these contentions lack merit, and that the Commissioner's ruling is due to be affirmed.

The ALJ found that claimant suffered from the severe impairments of comminuted fracture of the left ankle and chronic pain. He nonetheless concluded that claimant retained

> the residual functional capacity to perform unskilled work at the light exertional level as defined in 20 CFR 404.1567(b) with standing/walking a total of 4 hours during an 8 hour work day or not more [than] 30 minutes at a time; sitting up to about 6 hours total during an 8 hour work day; push/pull or operate hand controls using both hands but use only one leg to operate foot controls; with occasional balancing; frequent crawling; occasional stooping, kneeling, or crouching; and, the need to avoid exposure to unprotected heights and dangerous machinery.[1]

Based upon the testimony of a vocational expert, the ALJ concluded that claimant was not disabled because, even considering claimant's age, education, work experience, and residual functional capacity, there were jobs existing in significant

---

[1]Tr. at 15.

2

numbers in the national economy that he could perform.[2]  Claimant argues that the ALJ's decision was unsupported by the evidence because it was contradictory to statements made by Dr. Theodis Buggs, claimant's treating workmen's compensation physician.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted).  Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*.  Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner."  20 C.F.R. § 416.927(e).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate:  the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is

---

[2]Tr. at 18.

consistent with the record as a whole; the doctor's specialization; and other factors.

*See* 20 C.F.R. § 404.1527(d).  *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Claimant was admitted to Baptist Medical Center Princeton on March 23, 2007, with extensive fractures of the distal tibia and fibula of his left foot with disruption of the mortise joint.[3]  Following surgery, he began to see Dr. Theodis Buggs of Princeton Orthopaedics, a workmen's compensation physician.  Dr. Buggs' treatment notes consistently reflect that claimant's condition was progressing well.[4]  On April 2, April 16, and May 30, 2007, Dr. Buggs' treatment plan included increasing activity as tolerated.[5]  On May 1, 2007, claimant had a procedure to remove bony fragments

---

[3]Tr. at 174-75.

[4]*See* Tr. at 211 (4/2/07 treatment notes, stating that claimant had a "history of doing satisfactorily"); 210 (4/16/07 treatment notes, stating that claimant was "doing satisfactorily," and that his wound was healing well); 209 (4/30/07 treatment notes, stating that claimant had a "history of doing satisfactorily" and his wound was healing well); 208 (5/9/2007 treatment notes, stating that claimant was "doing satisfactorily" and "improving"); 207 (5/30/07 treatment notes, stating that claimant was "doing well"); 206 (6/29/07 treatment notes, stating that claimant was "doing well"); 205 (7/18/07 treatment notes, stating that claimant was "doing well"); 238 (8/8/07 treatment notes, stating that claimant was "doing well" and would begin physical therapy); 239 (8/29/07 treatment notes, stating that claimant was "doing well" and that physical therapy would be continued); 240 (9/28/07 treatment notes, stating that claimant was "doing satisfactorily" and that he could return to light duty); 293 (10/29/07 treatment notes, stating that claimant was "doing well" with some limitations); 294 (1/4/08 treatment notes, stating that claimant was "doing well" and could tolerate increased activity).

[5]Tr. at 210-11.

near the injury site. He tolerated the procedure well, and on May 9, 2007, Dr. Buggs stated that claimant's condition was improving.[6]  On August 8, 2007, Dr. Buggs prescribed physical therapy for weight bearing and range of motion exercises.[7]  By September 28, 2007, the swelling in claimant's ankle had decreased, and his range of motion had improved.  He was released for "light duty" work.[8]  That same date, Dr. Buggs signed a work form stating that claimant should be given limited work for one month, with "no prolonged standing or walking" and "no climbing."[9]  On October 29, 2007, Dr. Buggs stated that while claimant was "doing well," he did report some discomfort and some problems walking long distances.  Claimant had "[m]oderate swelling of the left ankle but somewhat improved with range of motion of the ankle still limited in dorsal and plantar flexion."  Dr. Buggs' plan was as follows:

> At this time we will continue increasing activity as tolerated, continue range of motion exercises, we will see him again in two months for recheck.  He will continue to have problems with limitation as far as walking, standing, or stooping.  He will have problems with any type of activities that require prolonged weight bearing on the left lower extremity.[10]

On March 31, 2008, Dr. Buggs stated that claimant experienced "continued discomfort" and had "[n]o history of any significant changes other than still having

---

[6]Tr. at 208.

[7]Tr. at 238.

[8]Tr. at 240.

[9]Tr. at 241.

[10]Tr. at 293.

major limitations." He had "[c]ontinued decreased range of motion" and "[c]ontinued swelling of his left ankle." Dr. Buggs stated, "At this time we will suggest continued increasing activity as tolerated. We do not believe he can perform any work which would require significant standing walking, or climbing. His limitations are pretty much sedentary type activities."[11]

The ALJ did not specifically state the weight he afforded Dr. Buggs' treatment notes. Instead, the ALJ pointed out that the record did not contain any functional evaluations or opinions from treating sources, and he stated that "the reports and conclusions from the consultative and the non-examining sources are afforded *appropriate* weight."[12] The ALJ was correct that Dr. Buggs' treatments notes are not the same as a formal evaluation of claimant's functional capacities. Furthermore, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, about a claimant's residual functional capacity. 20 C.F.R. § 416.927(e).

If Dr. Buggs' records are viewed from an appropriate perspective, it is clear that they do not necessarily conflict with the ALJ's residual functional capacity findings. Claimant argues that the ALJ should have found him disabled based upon Dr. Buggs' March 31, 2008 comments. According to claimant, if he was limited to

---

[11]Tr. at 295.

[12]Tr. at 17 (emphasis supplied).

6

sedentary activities, the Medical-Vocational Guidelines would mandate a finding of disability, at least as of his fiftieth birthday.  Claimant points to Medical-Vocational Rule 201.12, which mandates a finding of disability for an individual closely approaching advanced age, with more than a high school education that does not provide for direct entry into skilled work, whose previous work experience included only unskilled labor, and who is limited to sedentary work as a result of severe medically determinable impairments.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.12.  Claimant is correct that Rule 201.12 would mandate a finding of disability under those circumstances.  Even so, the record does not support a finding that claimant is limited to only sedentary work. While Dr. Buggs stated that claimant was limited to "sedentary type" activities, there is no indication that Dr. Buggs defined the term "sedentary" the same way it is defined by Social Security Regulations. Similarly, while Dr. Buggs proscribed "significant" or "prolonged" standing and walking, he did not explain exactly what he meant by those descriptive terms.  The ALJ's assessment of no more than four hours of standing or walking during an eight-hour workday is not necessarily inconsistent with the limitations on "significant" or "prolonged" standing or walking imposed by Dr. Buggs, especially considering that the ALJ also stated that standing and walking should not be performed for more than thirty minutes at a time.

7

Furthermore, the length of time a claimant is able to stand or walk is not the only factor bearing on the level of work the claimant is able to perform under the Regulations.  The Regulations provide that

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  There is no indication that claimant was limited to lifting twenty pounds or less.  Furthermore, the regulatory definition of "light work" also includes sitting "most of the time," if pushing and pulling of arm or leg controls is included.  Dr. Buggs did not state that claimant had any limitations on sitting, and the ALJ concluded that claimant could both sit for six hours a day and operate hand and foot controls (albeit with only one foot).  Those assessments and limitations are consistent with the regulatory definition of light work.

Finally, it is worth noting that the ALJ's residual functional capacity finding is consistent with the limitations imposed by consultative examiner Dr. Patrick Ifediba, who completed a Physical Capacities Evaluation Form on May 5, 2009.  Dr. Ifediba indicated that claimant could lift and/or carry up to twenty pounds

occasionally and ten pounds frequently.  He could sit for a total of six hours, and stand and walk for a combined total of four hours, in an eight-hour workday. Claimant could occasionally perform pushing and pulling movements, climb and balance, perform gross and fine manipulation, bend, stoop, reach, and work around hazardous machinery, dust, allergens, and fumes.  Claimant could operate motor vehicles, and he did not require the use of an assistive device.[13]

Consistent with the foregoing, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED.  Costs are taxed against claimant.  The Clerk is directed to close this file.

DONE this 26th day of October, 2010.

_____
United States District Judge

---

[13]Tr. at 259.